**PHOTOPAINT TECHNOLOGIES, LLC, Petitioner,**

v.

**SMARTLENS CORPORATION and Steven Hylen, Respondents.**

**No. 01 Civ. 8877(WK).**

United States District Court, S.D. New York.

June 13, 2002.

---

1. This includes Donna Karan's desire to "preserve a factual record on this issue" in order to "permit appellate review."

· Kevin M. Hart, Craig S. Hilliard, Stark & Stark, A Professional Corporation, Princeton, NJ, for Petitioner.

Michael J. Sweedler, Kandis M. Khan, Darby & Darby, PC, New York City, for Respondents.

### OPINION & ORDER

WHITMAN KNAPP, Senior District Judge.

Petitioner Photopaint Technologies, LLC ("Photopaint") moves this Court to confirm an arbitration award pursuant to 9 U.S.C. § 9. Respondents Smartlens Corporation ("Smartlens") and Steven Hylen ("Hylen") (hereinafter collectively the "Respondents") oppose the confirmation of the arbitration award and cross-move to dismiss the petition underlying Photopaint's motion, or in the alternative, for summary judgment, on the grounds that the petition is time-barred.

For the reasons that follow, we grant the Respondents' cross-motion for summary judgment, dismiss Photopaint's action, and thereby deny Photopaint's motion to confirm the arbitration award.

### BACKGROUND

In 1997, Photopaint entered into a License Agreement with Smartlens for the purpose of developing certain patented technology. That agreement contained an arbitration clause which provided in pertinent part that "any dispute arising out of or relating to this Agreement ... shall be finally settled by arbitration to be held in New York, New York, in accordance with the rules then applicable of the American Arbitration Association ('AAA'), or such body as the AAA may designate." Hilliard Aff., Ex. A.

Thereafter, in 1998. Smartlens asserted that Photopaint had breached the License Agreement and attempted to terminate that contract. After the parties unsuccessfully tried to resolve their dispute, Photopaint filed a Demand for Arbitration with the AAA on approximately October 21, 1998. Pursuant to the terms of the License Agreement, the arbitration was held in New York, New York.

On May 26, 2000, the arbitrator hearing the dispute signed an arbitration decision to which he referred as a "Final Award"

(hereinafter similarly referred to as the "Final Award") and transmitted it to the AAA so that the Final Award could be sent on to the parties. The AAA did not deliver that Final Award to either party until October 3, 2000.

Between July 2000 and October 2000, Smartlens sent a number of letters to the AAA wherein they, in effect, sought to reopen the arbitration hearing based on additional evidentiary submissions. The arbitrator considered these additional submissions and treated them collectively, as an application for the modification of the arbitration award. On October 23, 2000, after reiterating that he had rendered a final decision on May 26, 2000, the arbitrator denied Smartlens' application for the modification of that award on the grounds that the application did not fall within the applicable grounds for modification.

In accordance with the terms of the Final Award, either party had the option to rescind the License Agreement "[w]ithin thirty (30) days after receipt" of the Award. Hilliard Aff., Ex. C. If Photopaint chose to rescind, it would be entitled to receive $319,932.55 from Smartlens. If Smartlens elected to rescind. Photopaint would be entitled to receive $384,141.75 from Smartlens, as well as Photopaint's share of the AAA's costs.

On October 31, 2000, Photopaint and Smartlens agreed to extend the recission deadline enumerated in the Final Award from November 2, 2000 to November 16, 2000. The purpose of the extension was to allow the parties to engage in settlement negotiations in an attempt to reach a resolution with respect to the License Agreement and the obligations thereunder which would not limit the parties to the conse-

quences set forth in the Final Award. The initial extension of time was memorialized in a letter agreement prepared by Smartlens' counsel. The parties continued to pursue settlement negotiations from November 2000 through July 2001 and continued to extend the rescission deadline by a series of successive letter agreements (including one agreement to an indefinite extension of the rescission deadline which remained in effect from approximately February 4, 2001 through April 17, 2001).

Despite these settlement discussions, the prospect of settlement fell through. As such, on July 27, 2001, Photopaint notified Smartlens' counsel that it had elected to rescind the License Agreement and demanded payment in the amount of $319,932.55 in accordance with the terms of the Final Award. When Smartlens failed to pay that amount, Photopaint commenced this action by filing a petition with this Court on October 3, 2001 for the summary confirmation of the arbitration award under 9 U.S.C. § 9. Thereafter, on November 13, 2001, Photopaint acted on that petition by moving to confirm the arbitration award on the same grounds enumerated in its petition. Smartlens answered Photopaint's petition with objections and simultaneously cross-moved to dismiss that action, or in the alternative for summary judgment, on the grounds that the petition was time-barred by 9 U.S.C. § 9.

We have diversity jurisdiction over Photopaint's petition pursuant to 28 U.S.C. § 1332(a)(1).[1] Venue in this Court is proper under 28 U.S.C. § 1391(a).

### DISCUSSION

On October 3, 2001, Photopaint filed a petition pursuant to Section 9 of the Fed-

---

1. Petitioner Photopaint is a limited liability corporation with its principal place of business in New Jersey. Respondent Smartlens is a Georgia corporation with its principal place of business in Florida and Respondent Hylen is a citizen of Connecticut. In addition, Photopaint has petitioned this Court to confirm an arbitration award in excess of $75,000.

eral Arbitration Act, 9 U.S.C. § 9, to confirm an arbitration award. Thereafter, on November 13, 2001, Photopaint acted on that petition by moving to confirm the arbitration award in accordance with the foregoing statute.

Under the Federal Arbitration Act, "a party wishing to confirm an arbitration award may apply to the court for a confirmation order any time within one year 'and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in'" 9 U.S.C. § 10 and 9 U.S.C. § 11. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir.1984). " 'The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court.' " *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir.1997), *cert. denied* 522 U.S. 1111, 118 S.Ct. 1042, 140 L.Ed.2d 107 (1998). Hence, "the showing required to avoid summary confirmation is high." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987). "Absent a statutory basis for modification or vacatur, the district court's task ... [is] to confirm the arbitrator's final award as mandated by section 9 of the Act." *Id.*

The Respondents do not seek to avoid the confirmation of the award through either modification or vacatur. However, they contend that Photopaint's action, which was commenced via the petition, is time-barred under 9 U.S.C. § 9 and accordingly cross-move to dismiss that petition, or in the alternative for summary judgment, on that ground. Since both parties have introduced evidence outside the four corners of the original petition in briefing or responding to that cross-motion and thereby treated it, in effect, as a cross-motion for summary judgment, we similarly treat the cross-motion as one for summary judgment. *See In re G. & A. Book, Inc.*, 770 F.2d 288, 295 (2d Cir.1985) *cert. denied*, *M.J.M. Exhibitors, Inc. v. Stern*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *German v. Pena* (S.D.N.Y. 2000) 88 F.Supp.2d 216, 219.[2]

"Summary judgment is appropriate where the Court is satisfied 'that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The function of the district court in considering the motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried." *Eastman Machine Co., Inc. v. United States*, 841 F.2d 469, 473 (2d Cir. 1988). In making this determination, we "must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion [for summary judgment]." *Cifarelli v. Vil-*

---

2. Under Local Civil Rule 56.1, a party moving for summary judgment must submit a short and concise statement of the material facts as to which it contends there is no genuine issue of fact to be tried. A party opposing such a motion must similarly submit a short and concise statement of the materials facts as to which it contends there is genuine issue of fact to be tried. In this instance, neither party submitted the requisite statements with their respective briefs. While Local Civil Rule 56.1 provides that a failure to submit such a statement may constitute grounds for the denial of a motion for summary judgment, we will not deny Smartlens' motion on the basis of this technical defect as the relevant facts are apparent from both parties' briefs and affidavits and Photopaint has not demonstrated (nor has it even sought to demonstrate) that it was prejudiced by Smartlens' failure to submit such a statement. *See United States v. One Hundred and Thirty–Four Thousand, Seven Hundred and Fifty–Two Dollars United States Currency, more or less*, 706 F.Supp. 1075, 1082 n. 13 (S.D.N.Y.1989).

*lage of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) .

With these considerations in mind, we turn to the merits of the arguments before us.

## A. The Federal Arbitration Act Statute Of Limitations

■ "Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9 . . . sets forth the procedures under which arbitration awards are to be confirmed by district courts." *Ottley*, 819 F.2d at 375. That section of the Federal Arbitration Act ("FAA") provides in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9. Thus, "the district court must grant a petition to confirm arbitration if it is properly brought within one year of the date of the award." *Ottley*, 819 F.2d at 375.

The Respondents contend that the foregoing provision of the FAA imposes a mandatory one-year statute of limitations on petitions for the summary confirmation of arbitration awards brought under 9 U.S.C. § 9. Under their interpretation of § 9, a party which fails to apply for the summary confirmation of an arbitration award within one year of the date upon which the award is made would be time-barred from pursuing such summary confirmation in accordance with § 9. Hence, since Photopaint failed to apply to this Court for the confirmation of the arbitration award within one year of May 26, 2000 (i.e. the date on which the Final Award was rendered by the arbitrator), the Respondents argue that Photopaint's petition for summary confirmation under 9 U.S.C § 9 is time-barred. Photopaint, however, construes the language in the statute quite differently, and contends that § 9 imposes no such statute of limitations.

In order to address their motions, we are called upon to determine whether the terms set forth in 9 U.S.C. § 9 impose a one-year statute of limitations. "In resolving the meaning of statutory text, we are mindful that a central axiom of statutory construction holds that 'the starting point in every case involving construction of a statute is the language itself.' " *Lisa's Party City, Inc. v. Town of Henrietta* (2d Cir.1999) 185 F.3d 12, 14. *See also Connecticut National Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what is says there.") Accordingly, we begin our analysis by looking to the language of the statute itself. *Auburn Housing Authority v. Martinez* (2d Cir. 2002) 277 F.3d 138, 143.

Section 9 states in pertinent part that "at any time *within one year after the award is made*, any party to the arbitration *may apply* to the court so specified for an order confirming the award. . . ." 9 U.S.C. § 9 (emphasis added). In providing that "any party to the arbitration may apply to the court . . . for an order con-

firming the award," Congress delineated a statutory procedure by which arbitration awards could be summarily confirmed by district courts. *See Ottley*, 819 F.2d at 375. This permissive application process for the summary confirmation of arbitration awards might have remained altogether unqualified had this statutory phrase appeared alone. However, Congress specifically qualified that phrase and the applicable summary confirmation procedure with, *inter alia*, a durational limitation when it included the phrase "within one year after the award is made" in the same sentence of that statute.

The meaning of statutory language depends on the context. *United States v. Dauray*, 215 F.3d 257, 261 (2d Cir.2000). *See also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("The plainest or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole.") When the phrase "within one year after the award is made" is read in context with the phrase "any party to the arbitration may apply to the court ... for an order confirming the award," then the "one year" period therein circumscribes a party's otherwise permissive decision to avail itself of the summary confirmation procedure. The former phrase restricts the latter phrase because it imposes a specific time limit on when the party may invoke the confirmation process set forth in § 9.

Photopaint focuses on the phrase "may apply" and suggests that the term "may" requires a permissive reading of the "one year" limitation preceding it. The term "may" in a statute is generally construed as being permissive rather than mandatory. *See In re New Haven Projects Ltd. Liability Co.*, 225 F.3d 283, 287 (2d Cir.

2000), *cert. denied, New Haven Products Ltd. Liability Co. v. City of New Haven*, 531 U.S. 1150, 121 S.Ct. 1093, 148 L.Ed.2d 966 (2001); *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1005 (2d Cir.1993). By connecting the permissiveness of the word "may" with the time limitation which precedes it in the statutory provision, Photopaint would interpret the statute in a manner which would allow a party to apply for the summary confirmation of an arbitration award under § 9 more than one year after the arbitration award had been made.

However, in construing a statute, we must give effect, if possible, to every word Congress has uttered, *see Bowsher v. Merck & Co.*, 460 U.S. 824, 833, 103 S.Ct. 1587, 75 L.Ed.2d 580 (1983), and generally avoid constructions that render portions of a statute superfluous. *United States v. Eng*, 14 F.3d 165, 172 (2d Cir.1994). *See also Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 640 (2d Cir.1999) ("It is a well-settled rule of statutory construction that 'courts should disfavor interpretations of statutes that render language superfluous.'") The interpretation urged by Photopaint would impermissibly read the phrase "one year" out of § 9. Such a reading is unwarranted where, as here, the phrase "may apply" can be reconciled with the one-year limitations period enumerated in § 9 without rendering that limitations period altogether superfluous.

The permissive term "may" does not require us to read the one-year limitations period out of the statute because it does not relate to the nature of that limitations period. Rather, the permissiveness of the term "may" qualifies a party's right to "apply to the court ... for an order confirming the [arbitration] award." Thus, confirmation of an arbitration award in accordance with 9 U.S.C. § 9 is not a mandatory procedure. *See In re Consoli-*

dated *Rail Corp.*, 867 F.Supp. 25, 30, 32 (D.D.C.1994) (hereinafter referred to as *"Consolidated Rail Corp"*). "In fact, in the majority of cases, the parties to an arbitration do not obtain court confirmation" and the arbitration "award need not actually be confirmed by a court to be valid." *Florasynth, Inc.*, 750 F.2d at 176. *See also The Hartbridge*, 57 F.2d 672, 673 (2d Cir.1932), *cert. denied, Munson Steamship Line v. North England Steamship Co.*, 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed. 977 (1933) (referring to a party's right to move for the confirmation of an arbitration award under § 9 as a "privilege").

The term "may," when thus read in its proper context, does not render the phrase "within one year after the award is made" superfluous. Rather, the former term establishes the permissive nature of a party's decision to pursue summary confirmation under 9 U.S.C. § 9 while the latter phrase restricts the time within which the party may, if it so chooses, invoke that procedure. Accordingly, while a party may elect not to take advantage of the summary confirmation procedure enumerated in 9 U.S.C. § 9, a plain reading of that statute indicates that a party which decides to invoke that specific procedure must do so within one year after the arbitration award is made or it will be time-barred from availing itself of that particular statutory process. *See Consolidated Rail Corp.*, 867 F.Supp. at 32.

Our interpretation of 9 U.S.C. § 9 as imposing a one-year statute of limitations is supported by the Second Circuit's treatment of strikingly similar statutory language in 9 U.S.C. § 207. In *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.*, 989 F.2d 572 (2d Cir.1993) (hereinafter referred to as *"Seetransport"*), the Second Circuit interpreted a parallel provision of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which governs international arbitration awards and is enforced by Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq. See Sphere Drake Ins. Ltd. v. Clarendon National Ins. Co.*, 263 F.3d 26, 29 (2d Cir.2001). Through language which is similar to that employed by § 9, Section 207 of the FAA provides in pertinent part that *"[w]ithin three years after an arbitral award ... is made,* any party to the arbitration *may* apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207 (emphasis added).

The plaintiff in *Seetransport* had sought an order under § 207 confirming an arbitration award issued by the International Chamber of Commerce in Paris, France, *See Seetransport*, 989 F.2d at 574. The defendant opposed the enforcement of the award on the grounds that the enforcement action was time-barred under 9 U.S.C. § 207 because the plaintiff had failed to apply for confirmation of the award within the requisite time period mentioned in that provision. *Id.* at 580–581. The Second Circuit agreed with the defendant, referred to the language in § 207 as a statute of limitations, and held that the plaintiff's action was barred because it had failed to apply for confirmation within the limitations period. *See id.* at 581. *See also Flatow v. Islamic Republic of Iran* 76 F.Supp.2d 28, 29 (D.D.C. 1999) (construing § 207 as imposing a statute of limitations).

We recognize that § 207 governs international arbitrations and not the arbitration at issue. However, the Second Circuit's treatment of the strikingly similar language enumerated in 9 U.S.C. § 9 is sufficiently analogous to lend support to the position that § 9 does impose a statute of limitations period and that the term "may" should not be construed in such a

manner that it would render the one year period set out in the statute permissive. *See Consolidated Rail Corp.*, 867 F.Supp. at 30 (relying on the Second Circuit's treatment of the language in 9 U.S.C. § 207 to determine that the terms in 9 U.S.C. § 9 imposed a one-year statute of limitations).[3]

Such an interpretation of § 9 is further supported by the Second Circuit's *dicta* in *Kerr–McGee Refining Corp. v. M/T Triumph*, 924 F.2d 467 (2d Cir.), *cert. denied* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). There, the Second Circuit described the one-year period in 9 U.S.C. § 9 as a "one-year limitation" and explained that "a party has one year [under 9 U.S.C. § 9] to avail itself of summary proceedings for confirmation of an award." *Kerr–McGee Refining Corp.*, 924 F.2d at 471. *See also Ottley*, 819 F.2d at 375 ("The statute provides that the district court must grant a petition to confirm an arbitration award if it is properly brought within one year of the date of the award"); *Jamaica Commodity Trading Co. Ltd. v. Connell Rice & Sugar Co., Inc.*, 1991 WL 123962, *2 (S.D.N.Y. July 3, 1991), *citing* 9 U.S.C. § 9 ("The Arbitration Act ... allows a party one year in which to confirm an award"); *Colavito v. Hockmeyer Equip. Corp.*, 605 F.Supp. 1482, 1486 (S.D.N.Y. 1985) (indicating that the one-year period referenced in 9 U.S.C. § 9 is a statute of limitations and that a petition to confirm an arbitration award would be timely if it was filed within one year of the date the

arbitration award was rendered). While the Second Circuit's comments in *Kerr–McGee Refining Corp.* on this point were *dicta*, we find such commentary instructive, particularly when read in the context of the Second Circuit's treatment of the strikingly similar statutory language set forth in 9 U.S.C. § 207. Hence, we find that both a plain reading of the statute and Second Circuit case law indicate that § 9 does impose a one-year statute of limitations on the summary confirmation of arbitrations awards in accordance with the FAA.

We are cognizant that our decision today is at odds with the contrary interpretation of § 9 adopted by the majority of federal courts which have addressed the issue. *See Valu–U Constr. Co. of South Dakota v. Rosebud Sioux Tribe*, 146 F.3d 573, 581 (8th Cir.1998); *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 155 (4th Cir.1993); *Nations Personnel of Texas, Inc. v. American Medical Sec.*, 2000 WL 626868, *2 (N.D.Tex. May 15, 2000); *Bhushan v. Brown & Root, Inc.*, 1999 U.S.Dist. LEXIS 1968, *17–*18 (S.D.Ala. Feb. 9, 1999); *In the Matter of the Arbitration Between Gronager v. Gilmore Securities & Co.*, 1996 WL 200303, *3 (S.D.N.Y. April 25, 1996), *aff'd on other grounds* 104 F.3d 355 (1996) (unpublished table decision) (hereinafter *"Gronager"*); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573, 575 (D.Neb. 1978); *Brown v. Bridgeport Rolling Mills Co.*, 245 F.Supp. 41, 45 (D.Conn.1965).[4]

---

3. *But cf. Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 706 (2d Cir.1985), *certiorari denied* 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986), *citing Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573, 574 (D.Neb.1978) (addressing the venue provision in 9 U.S.C. § 9 which states that an application to confirm an arbitration award "may be made to the United States court in and for the district within which such award

was made" and determining that the venue provision was permissive rather than exclusive since "[o]rdinary canons of statutory construction suggest that Congress would have used stronger language than 'such application may be made' or 'may apply' if the intention was to restrict the power of a federal court in Arbitration Act cases' ").

4. We note that a number of the foregoing courts arrived at their conclusions by errone-

*See also Derwin v. General Dynamics Corp.,* 719 F.2d 484, 490 n. 5 (1st Cir.1983).

Indeed, one court within our own district which previously addressed the question before us reached a very different determination then the one to which we arrive today. In *Gronager,* Judge McKenna held that although the petitioner's motions to confirm an arbitration award "had not been served within the one year referred to in 9 U.S.C. § 9, that statute 'must be interpreted as its plain language indicates, as a permissive provision which does not bar the confirmation of an award beyond a one-year period.' " *Gronager,* 1996 WL 200303 at *3, *quoting Sverdrup Corp.,* 989 F.2d at 156.

Judge McKenna's reliance on *Sverdrup Corp.* is understandable, for that Fourth Circuit decision eloquently addresses why a number of courts have determined that the time period referenced in 9 U.S.C. § 9 is permissive in nature and not a statute of limitations. As the Fourth Circuit noted in *Sverdrup Corp.,* "[t]he use of the word 'may' as opposed to mandatory language, has been deemed to have been of critical importance in determining the permissive nature of § 9. The word '[m]ay in a statute normally confers a discretionary power, not a mandatory power, unless the legislative intent, as evidenced by the legislative

history, 'evidences a contrary purpose.' " *Sverdrup Corp.,* 989 F.2d at 151. Since Congress had used "alternating permissive and mandatory language throughout the FAA," the Fourth Circuit found that "Congress was cognizant of the difference between 'may' and 'must' and intended that the term 'may' be construed as permissive." *Id. See also Val–U Constr. Co. of South Dakota,* 146 F.3d at 581 ("We hold that § 9 is a permissive statute and does not require that a party file for confirmation within one year. If Congress intended for the one year period to be a statute of limitations, then it could have used the word 'must' or 'shall' in place of 'may' in the language of the statute").

With due respect to the courts which have determined that 9 U.S.C. § 9 does not impose a one-year statute of limitations, we find that the plain language of the statute compels a contrary conclusion. While the use of the word "may" is properly construed as being permissive, the foregoing courts incorrectly, and in many cases without explanation, read the term "may" out of context and imparted the permissive nature of that term to the one-year limitation. In doing so, they unnecessarily rendered the limitation superfluous. As we discussed above, the permissive "may," when read in context, relates to a

___

ously relying, in whole or in part, on the decision of the Sixth Circuit in *Kentucky River Mills v. Jackson* 206 F.2d 111, 120 (6th Cir.), *cert. denied* 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953). *See Sverdrup Corp.,* 989 F.2d at 150–151; *Bhushan,* 1999 U.S.Dist. LEXIS 1968 at *17–*18; *Paul Allison, Inc.,* 452 F.Supp. at 575; *Brown,* 245 F.Supp. at 45 n. 7. The Sixth Circuit in *Kentucky River Mills* did not specifically address whether the terms of 9 U.S.C. § 9 imposed a statute of limitations. Rather, in that case, the appellant argued that the arbitration award at issue could not be enforced by an action at law commenced more than one year after that award was made. *See Kentucky River Mills,* 206 F.2d at 120. However, the appellant

therein based his limitations argument on the language of 9 U.S.C. § 9. The Sixth Circuit rejected that argument, for the court found that, under the permissive language of § 9, "[a] party *may,* therefore, *apply* to the court for an order confirming the award, *but is not limited to such remedy.* Prior to the enactment of the United States Arbitration Act, *an action at law* on the award was the proper method of enforcing it." *Id.* (emphasis added). Thus, the court held that the one-year limitation contained in 9 U.S.C. § 9 did not bar enforcement of the award altogether since, in essence, the court had determined that the award could still be enforced by an action at law. *See id. See also Consolidated Rail Corp.,* 867 F.Supp. at 29–30.

party's decision to avail itself of the summary confirmation procedure enumerated in § 9 and not to the time within which that decision must be made.[5] Just as significantly, we find that the contrary decisions reached by the foregoing courts cannot be reconciled with either the Second Circuit's comments in *Kerr–McGee Refining Corp.* or the Second Circuit's treatment of nearly identical statutory language in *Seetransport.*

Accordingly, we conclude that if a party does not bring an action to confirm an arbitration award under 9 U.S.C. § 9 within one year after the award is made, that party will be time-barred from availing itself of the summary confirmation process provided by § 9.[6] However, having arrived at that determination, we must still decide whether Photopaint is time-barred from pursuing this petition under the facts of this case.

## B. The Rendering Of The Arbitration Award

█ Although we have determined that § 9 does impose a one-year statute of limitations, Photopaint suggests that its action is not time-barred thereunder as it filed this petition on October 3, 2001, within one year of the date on which the arbitrator's Final Award was delivered to it. *See* Pet'r.'s Opp'n Brief at 2 ("the [arbitration] award was not 'made' until October 3, 2000, when it was sent to the parties by the AAA, and this action was concededly filed within one year of that date"). In contrast, the Respondents contend that Photopaint's petition was not filed within the one-year limitations period as the arbitration award was purportedly made when the arbitrator rendered his Final Award on May 26, 2000.

---

**5.** The Fourth Circuit in *Sverdrup Corp.* refused to read 9 U.S.C. § 9 as a statute of limitations both on the basis of statutory construction *and* on the basis of policy considerations. With respect to the latter, the Fourth Circuit found that the "proliferation of confirmation motions" which would result from the imposition of such a statute of limitations provided "an equally compelling reason to refrain from interpreting § 9 as containing a strict statute of limitations." *Sverdrup Corp.*, 989 F.2d at 155. The court reasoned that "[i]f § 9 was given the effect of a statute of limitations, individuals would be forced to protect their awards through arbitration by filing motions to confirm in every case." *Id.* at 156.

Although the Fourth Circuit implied that judicial economy would be sacrificed by a procedure which required the confirmation of arbitration awards within a specified period, we respectfully disagree with this conclusion and, like the court in *Consolidated Rail Corp.*, hold a different opinion. As the court stated in *Consolidated Rail Corp.*:

> Fairness, finality, and judicial economy are favorably affected by requiring the bringing of an action for confirmation within a specified period pursuant to § 9. One of the FAA's purposes is to provide parties with an

effective alternative dispute resolution system which gives litigants a sure and expedited resolution of disputes while reducing the burden on the courts. Arbitration should therefore provide not only a fast resolution but one which establishes conclusively the rights between the parties. A one year limitations period is instrumental in achieving this goal ... [T]his court is of the view that a one year confirmation period provides the parties with a true sense of finality; awards that are confirmed within one year have the effect of a court judgment and awards not confirmed are unenforceable under the FAA.

*Consolidated Rail Corp.*, 867 F.Supp. at 31.

**6.** In reaching this decision, we express no opinion as to whether a party may use particular actions under either state law or common law as an alternative means by which to confirm an arbitration award. Since Photopaint solely seeks to confirm its arbitration award under 9 U.S.C. § 9 and the Respondents have solely sought to dismiss that petition on the grounds that it is time-barred under § 9, we limit our decision today to the question of whether or not Photopaint may secure summary confirmation of the award in accordance with § 9.

At the outset, Photopaint indicates that we should reject the position adopted by the Respondents in the motion at bar with respect to when the arbitration award was made because they advanced a contrary position before the arbitrator. Although inartfully raised via oblique references unsupported by legal citations, Photopaint appears, in effect, to invoke the doctrine of judicial estoppel. That doctrine "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1037 (2d Cir.), *cert. denied* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). "A party invoking judicial estoppel must show that (1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." *AXA Marine and Aviation Ins. (UK) Ltd. v. Seajet Industries, Inc.*, 84 F.3d 622, 628 (2d Cir.1996).

Assuming *arguendo* that judicial estoppel can be premised on positions taken in an arbitration proceeding, *see Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 2002 WL 193374, *6 (N.D.Ill. Feb. 7, 2002), judicial estoppel would still be inapplicable to the current argument advanced by the Respondents. "[T]he doctrine of judicial estoppel cannot apply in this case unless and until another court actually has been persuaded to adopt a position inconsistent from the one adopted here." *Rosenman & Colin LLP v. Sandler*, 2002 WL 83657, *2 n. 1 (S.D.N.Y. Jan.18, 2002).

In this instance, after the arbitrator rendered his decision on May 26, 2000, Photopaint sought to "reopen" the arbitration proceeding on the basis of new evidentiary submissions. After receiving the Final Award, Smartlens' counsel wrote to the AAA on October 4, 2000 and asserted, among other things, that a final award in the matter had not previously been "issued." *See* Hilliard Aff., Ex. D. Photopaint responded by arguing that the arbitrator should not reconsider his decision because the AAA's Commercial Arbitration Rules prohibited reconsideration after a final award had already been entered; as Photopaint believed that the merits of the claims had been decided by the arbitrator on May 26, 2000, it argued that the AAA's own Rules proscribed reconsideration. *See* Resp'ts.' Reply Brief, Ex. A.

In denying Smartlens' application, the arbitrator clearly agreed with the position advocated by Photopaint and not with that taken by Smartlens, for he specifically asked the AAA "to inform the parties that since the Final Award had [already] been rendered, the application could be taken under advisement only as an application for modification of the Award." *See* Resp'ts.' Cross–Mot. for Summ.J, Ex. 1 (wherein Rule R–38 of the AAA's Commercial Arbitration Rules provides that "[t]he hearing maybe reopened on the arbitrator's initiative, or upon application of a party, at any time *before the award is made*," while Rule R–48 instead provides for modification of an arbitration award "[w]ithin 20 days *after the transmittal of the award*") (emphasis added). In essence, the arbitrator rejected the position advanced by the Respondents and they cannot now be judicially estopped from pressing a contrary argument. *See Levinson v. United States* 969 F.2d 260, 264 (7th Cir.), *cert. denied* 506 U.S. 989, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992) ("[T]he party to be [judicially] estopped must have convinced the first court to adopt its position; a litigant is not forever bound to a losing argument.")

■ Having determined that the Respondents are not judicially estopped from

arguing that the arbitrator's award was "made" on May 26, 2000, we agree with them that the award was "made" on that date. As we discussed above, 9 U.S.C. § 9 provides that a party may apply to confirm an arbitration award "at any time within one year *after the award is made.*" 9 U.S.C. § 9 (emphasis added). In interpreting the virtually identical language enumerated in 9 U.S.C. § 207, which provides that a party may apply to confirm an international arbitration award "[w]ithin three years after an arbitral award . . . *is made,*" 9 U.S.C. § 207 (emphasis added), the Second Circuit in *Seetransport* agreed with the respondents that an arbitration award is "made" when the award is originally decided by the arbitrator. *See Seetransport,* 989 F.2d at 581. *See also Colavito,* 605 F.Supp. at 1486 (recognizing that a petition to confirm an arbitration award is timely if it is filed within one year of the date upon which the award is rendered).

Although the Final Award may not have been delivered to the parties until October 3, 2000, the arbitrator here decided the dispute before him on May 26, 2000. The arbitrator himself acknowledged as much in denying the Respondents' application for the modification of the award, for he specifically noted that he had rendered his decision on May 26th. Even if we had reason to doubt the arbitrator's assessment of when he rendered the Final Award, we would still find that he made his decision with respect to the award on May 26th, for the Final Award constitutes a complete determination that was not contingent on any further decrees on the arbitrator's part. *See Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 412–413 (2d Cir.1980) (recognizing that an arbitrator makes a final arbitration award where he intends the award to be a complete determination of all the claims submitted to him). Hence, the statute of limitations on Photopaint's application to confirm that award began to run on May 26, 2000, the date on which the arbitrator rendered his decision.

Since the arbitration award was "made" on May 26, 2000, and Photopaint did not file its petition for summary confirmation of that award under the FAA until October 3, 2001, Photopaint failed timely to act within the one-year statute of limitations set forth in 9 U.S.C. § 9.

## C. Equitable Tolling

■ Photopaint asserts, almost in passing, that "[b]efore October 3, 2000, the parties were not even aware that the arbitrator had signed the award on May 26, 2000, because the AAA did not send it to the parties for nearly five months." Pet'r.'s Opp'n Brief at 12–13. Although again inartfully raised via oblique references unsupported by legal citations, these statements suggest that Photopaint is attempting to invoke the doctrine of equitable tolling to excuse its failure timely to file a petition pursuant to 9 U.S.C. § 9.

The equitable tolling doctrine is "read into every federal statute of limitations." *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Kamens v. Summit Stainless, Inc.* (E.D.Pa. 1984) 586 F.Supp. 324, 328. Under "extraordinary circumstances," the doctrine of equitable tolling "can excuse a claimant's failure to pursue his claims in a timely manner." *Levy v. Aaron Faber, Inc.,* 148 F.R.D. 114, 119 (S.D.N.Y.1993). "The essence of the doctrine 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.'" *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985). *See also Netzer v. Continuity Graphic Associates, Inc.,* 963 F.Supp. 1308, 1316 (S.D.N.Y.1997) ("Under the eq-

uitable tolling doctrine ... a statute of limitations does not run against a plaintiff who was justifiably ignorant of his cause of action.") If the doctrine is applied, "the statute [of limitations] does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Cerbone,* 768 F.2d at 48. The party which seeks to take advantage of the doctrine must show that it's "continuing ignorance was not attributable to a lack of diligence" on its part. *Levy,* 148 F.R.D. at 119.

In this case, the arbitrator issued a "Partial/Interim Award of Arbitration" (hereinafter referred to as the "Interim Award") on August 3, 1999. As with his subsequent Final Award, the arbitrator's Interim Award determined that the License Agreement could be rescinded at the election of either party, or, if neither party elected to rescind, would continue in full force and effect. *See* Hilliard Aff., Ex. B. However, the Interim Award differed from the Final Award in that it did not completely dispose of the arbitration. Instead, the Interim Award directed Photopaint to submit to Smartlens an accounting detailing its costs and expenses in connection with past performance under the License Agreement so that a "price" could be set for an election to rescind the agreement. *See* Hilliard Aff. ¶ 14 and Ex. C. According to the terms of the Interim Award, Smart-

lens could dispute the costs and expenditures submitted by Photopaint.. If the parties could not themselves resolve such a dispute, then that dispute would be submitted to the arbitrator for his consideration. *See* Hilliard Aff., Ex. C.

In accordance with these terms, Photopaint submitted its accounting, Smartlens disputed it, and the arbitrator then proceeded to resolve the dispute and to issue a final decision. *See* Hilliard Aff. ¶ 4. Although the evidence submitted to us by the parties does not reflect the dates on which the foregoing dispute took place or the dates on which the parties filed further submissions with the arbitrator to resolve it, the arbitrator rendered his Final Award and thereby disposed of the entire matter on May 26, 2000. Hence, by process of elimination, we reasonably assume that the parties must have brought this dispute to the arbitrator sometime between August 3, 1999 (when the Interim Award was issued) and May 26, 2000 (when the Final Award disposed of the arbitration). ·

Pursuant to Rule R–43 of the AAA's Commercial Arbitration Rules, an award in an arbitration "shall be made promptly by the arbitrator, and unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator." [7] Resp'ts.' Cross–Mot. for Summ.J., Ex. 1. Neither party has submitted any evidence that

---

**7.** Although the parties have not expressly indicated that they agreed to be bound specifically by the AAA's Commercial Arbitration Rules, the record before us indicates that both parties conducted their arbitration and therefore made their arguments to the arbitrator in accordance with those Rules. *See* Resp'ts.' Reply Brief, Ex. A (letter wherein Photopaint opposed Smartlens' application for modification of the award on the basis of

the AAA's Commercial Arbitration Rules); Resp'ts.' Cross–Mot. for Summ.J. at 1–2 (wherein Smartlens indicated that the AAA's Commercial Arbitration Rules applied to the arbitration and the awards made thereunder). Accordingly, we now look to the AAA's Commercial Arbitration Rules to understand when the parties may have been put on notice to expect a decision from the arbitrator.

they agreed to depart from this timetable. Even were we to assume, for Photopaint's benefit, that the parties fully briefed and argued their dispute to the arbitrator as late as May 26, 2000 (i.e. the very date on which the arbitrator issued his final award resolving all disputes in the arbitration), the parties were clearly on notice under Rule R–43 that some decision by the arbitrator on their matter would be forthcoming within thirty days thereafter.

If the parties had not been on notice of the time frame enumerated in Rule R–43 for when an award was likely to be issued, then Photopaint's continuing ignorance about the May 26th award until that award's deliverance on its figurative doorstep might be understandable. Had that been the case, Photopaint would have had little reason to expect that an award would be issued in a particular time period.

However, through Rule R–43 of the AAA's Commercial Arbitration Rules, Photopaint did have notice with respect to the time frame in which an award was likely to be issued. Despite this, none of the evidence submitted by Photopaint indicates that it affirmatively inquired about the status of the award as month after month went by and the deadline enumerated in Rule R–43 had elapsed. Instead, on the record available to us today, Photopaint appears to have passively waited to receive the arbitration award for, at a minimum, over four months without inquiring into whether an award had been issued within the thirty day time frame imposed by Rule R–43.

We may not apply the doctrine of equitable tolling where the party seeking to invoke that doctrine fails to demonstrate that its ignorance was not attributable to a lack of reasonable diligence on its part. *See Netzer*, 963 F.Supp. at 1316–1317; *Levy*, 148 F.R.D. at 120. Since Photopaint has failed to demonstrate that its continuing ignorance about the issuance of the May 26, 2000 award for over four months was not attributable to a lack of reasonable diligence on its part, the application of the equitable tolling doctrine would not be justified under the circumstances. *See Hourahan v. Ecuadorian Line, Inc.*, 1997 WL 2518, *8 (S.D.N.Y. Jan. 3, 1997) (refusing to apply equitable tolling doctrine in part because plaintiff failed to act diligently where she did not contact a Human Rights Specialist with the City Commission to inquire about the status of her charge with the EEOC or the City Commission for approximately four months); *Tarr v. The College of Staten Island of the City University of New York*, 1993 WL 322842 (S.D.N.Y. Aug.18, 1993). *3 (finding that application of equitable tolling would be inappropriate where the plaintiff did not provide a reason for why he had not discovered significant facts underlying his action within a three-month time period).

### D. Equitable Estoppel

■ In addition to raising the argument, however obliquely, of equitable tolling, Photopaint directly contends that the Respondents must be equitably estopped from invoking the statute of limitations defense in this instance. Photopaint argues that the Respondents should be estopped from relying on their limitations defense on the grounds that Smartlens previously agreed to toll *all* time periods in order to permit the parties to engage in settlement negotiations whereby the parties could attempt to resolve the matter in a different manner than that reflected in the Final Award. Photopaint also contends that estoppel would be appropriate under the circumstances as it was allegedly lulled into believing that the filing of a petition to confirm the Final Award was unnecessary while the parties were pursuing these settlement negotiations.

"Ordinarily, the doctrine [of equitable estoppel] only applies where, although the plaintiff is aware of his cause of action, his delay is excused because either the defendant misrepresented the length of the limitations period or 'lulled the plaintiff into believing it was not necessary to· commence the litigation.'" *Netzer*, 963 F.Supp. at 1316. *See also Beneficial Capital Corp. v. Richardson*, 1995 WL 324768, *5 (S.D.N.Y. May 31, 1995) ("A court may estop a defendant from ·asserting a statute of limitations defense if the defendant's conduct induced the plaintiff to postpone bringing suit on a known cause of action.") Thus, "[t]o invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995). *See also Linmark Industries, Inc. v. M/V "Ruhr Express"*, 1990 WL 102234, *1 (S.D.N.Y. July 6, 1990) (" '[T]he basic question in determining whether an estoppel exists is whether plaintiff has been justifiably misled by defendant's actions; whether defendant's actions have lulled plaintiff into a false sense of security and so induced him not to institute suit in the requisite time period.' ")

The invocation of estoppel is unwarranted under the circumstances of this case. After the arbitrator rendered his Final Award on May 26, 2000, the AAA delivered that decision to the parties on October 3, 2000. *See* Hilliard Aff.,· Ex. C. Subsequently, on October 23, 2000, the arbitrator denied Smartlens' application for modification of the Final Award. *See* Hilliard Aff., Ex. E. In accordance with the terms of that award, either·party could have elected to rescind the License Agreement within thirty days from their receipt of that Award (i.e. within thirty days of October 3, 2000). *See* Hilliard Aff., Ex. C. Thereafter, the parties entered into settlement negotiations in an attempt to reach a resolution with respect to the License Agreement and the obligations thereunder which would not limit them to the consequences set forth in the Final Award. *See* Perrie Aff. ¶ 4.

On October 31, 2000, in an effort to pursue those settlement discussions, the parties agreed to extend the recision deadline enumerated in the Final Award for two weeks. *See* Hilliard Aff. ¶ 9 and Ex. F–1; Perrie Aff. ¶¶ 2–4. The parties continued to pursue those settlement discussions until July 27, 2001. *See* Hilliard Aff. ¶ 10. At the same time, they continued to agree to an extension of the rescission deadline through a series of successive letter agreements. *See* Hilliard Aff. ¶ 10. At no time did either of the Respondents agree that a settlement would in fact be reached and neither Photopaint nor the Respondents were obligated to extend the rescission deadline over the course of the negotiations. *See* Perrie Aff. ¶ 6. Eventually, the parties failed to arrive at a settlement and on July 27, 2001, Photopaint notified Smartlens that it had elected to rescind the License Agreement and demanded payment of $319,932.55 in accordance with the terms of the Final Award. *See* Hilliard Aff. ¶ 11 and Ex. G. When the Respondents failed to pay that· amount, Photopaint brought the instant petition pursuant to 9 U.S.C..§ 9 and subsequently moved to confirm the arbitration .award rendered on May 26, 2000.

Photopaint initially seeks to rely on the various extensions of time agreed to by the parties over the course of the settlement discussions in order to establish estoppel, for Photopaint· argues that Smartlens agreed to toll all time periods to permit settlement negotiations to move forward. However, the Respondents contend that an

extension of the deadline for filing an application to confirm the arbitration award was never mentioned . during settlement and maintain that they never agreed with or represented to Photopaint that such a deadline would be deferred or extended. *See* Perrie Aff. ¶ 7. The affidavit supplied by Photopaint's attorney does not contradict the Respondents' statements, for Photopaint's counsel, who himself signed many of the letter agreements, refers to those agreements specifically as extensions of the "rescission deadline" and not as agreements to toll all relevant time periods. *See* Hilliard Aff. ¶ 9 ("We agreed to extend the rescission deadline beyond November 2, 2000, in a good faith effort to pursue settlement discussions"); Hilliard Aff. ¶ 10 ("Between November 2000 and July 2001, the parties engaged in settlement negotiations. Throughout this period, the parties continued to extend the rescission deadline, by a series of successive letter agreements, through July 27, 2001"); Hilliard Aff. ¶ 12 ("Following the parties' entry into the first of the letter agreements extending the rescission deadline . . ."); Hilliard Aff. ¶ 16 ("Shortly after the April 16 draft was prepared, I received a phone call from Smartlens' counsel . .. He requested that I agree to further extensions of the rescission deadline . . . My clients agreed, and we further extended the rescission deadline several time through May, June, and July 2001"). *See also* Petition ¶ 13. Since Photopaint understood that the extensions merely represented an extension of the rescission deadline, it cannot now establish that it was justifiably misled by the extensions into believing that those letter agreements tolled *all* other deadlines.

Photopaint also contends that its settlement negotiations with the Respondents lulled it into believing that no petition for summary confirmation of the arbitration award was necessary while the parties were pursuing such negotiations. The Second Circuit has recognized that one prominent factor which frequently appears in estoppel cases is a settlement negotiation. *See Cerbone,* 768 F.2d at 49. In this respect, the Second Circuit has explained that "[w]here the defendant assures the plaintiff that he intends to settle and the plaintiff, in reasonable reliance on that assurance, delays in bringing his suit until after the statute [of limitations] has run, the defendant may be estopped to rely on the limitations defense." *Id.*

Although settlement discussions may have been ongoing from late October 2000 through July 2001, nothing in the evidence relied on by Photopaint or the Respondents suggests that the Respondents actually assured Photopaint that they would settle their dispute. Moreover, although Photopaint argues that "[t]he parties repeatedly agreed to postpone *any* action by either party under the Final Award to permit those negotiations to go forward," Pet'r.'s Opp'n Brief at 10 (emphasis added), it does not cite to any evidence to support that allegation and nothing in the affidavits they submitted provides specific factual support for that allegation. Indeed, Photopaint in large measure supports this allegation by reiterating its reliance on the extensions of time agreed to by the parties. In particular, Photopaint cites to one letter agreement where the parties agreed to an indefinite extension of time. However, as we have already discussed, the foregoing record cited to above repeatedly demonstrates that Photopaint merely viewed such agreements as extensions of the rescission deadline. *See, e.g.,* Hilliard Aff. ¶ 10 ("Between November 2000 and July 2001, the parties engaged in settlement negotiations. Throughout this period, the parties continued to extend the rescission deadline, by a series of successive letter agreements, through July 27, 2001.")

Ultimately, Photopaint's estoppel argument is supported by nothing more than it's passive reliance on the settlement discussions which were pursued by the parties between October 2000 and July 2001. "However, the mere fact that settlement negotiations have been ongoing between parties is insufficient to estop a party from asserting the statute of limitations as a defense." *Beneficial,* 1995 WL 324768 at *5. *See also Continental Ins. Co. of City of New York v. Fire Ass'n of Philadelphia,* 152 F.2d 239, 240–241 (6th Cir.1945); *Center Ice of DuPage, Inc. v. Burley's Rink Supply, Inc.,* 1997 WL 534256, *6 n. 6 (N.D.Ill. Aug. 20, 1997) ; *Alston v. Blue Streak Transportation Co.,* 1989 WL 35449, *2 (E.D.Pa. April 12, 1989); *Hollins v. Yellow Freight System, Inc.,* 590 F.Supp. 1023, 1028 (N.D.Ill.1984). Since Photopaint has failed to demonstrate that the Respondents either assured it that they would settle the matter, misrepresented the scope and nature of the agreed-upon extensions of the rescission deadline, or otherwise engaged in any conduct which lulled Photopaint into reasonably believing that it did not need to press forward with the summary confirmation of its arbitration award before the one-year statute of limitations had run, we find that estoppel would not be justified under the circumstances.

In sum, because Photopaint failed to file its petition to confirm the Final Award under 9 U.S.C. § 9 within one year of the date upon which the award was made and because Photopaint has failed to provide any evidence which would establish that the Respondents should be equitably estopped from relying on the limitations defense or that the limitations period should be equitably tolled, we grant the Respondents' cross-motion for summary judgment and dismiss Photopaint's petition on the grounds that it is time-barred. In accordance with our dismissal of its action, we must also deny Photopaint's motion to confirm the arbitration award under 9 U.S.C. § 9.

### CONCLUSION

For the foregoing reasons, we hereby grant the Respondents' cross-motion for summary judgment, dismiss Photopaint's petition on the grounds that it is time-barred, and, having thereby dismissed its action, accordingly deny Photopaint's motion to confirm the arbitration award.

**SO ORDERED.**