**In re CONSOLIDATED RAIL CORPORATION and Delaware & Hudson Railway Company.**

**CONSOLIDATED RAIL CORPORATION, Petitioner,**

v.

**DELAWARE AND HUDSON RAILWAY COMPANY, INC., Respondent.**

No. 93–cv–0416 RMU.

United States District Court, District of Columbia.

Nov. 17, 1994.

Order Nov. 18, 1994.

---

Gerald Patrick Norton, Harkins & Cunningham, Washington, DC, for plaintiff.

Terrance Michael Hynes, Sidley & Austin, Washington, DC, for defendant.

**MEMORANDUM OPINION**

URBINA, District Judge.

## I. BACKGROUND ON THE USRA, CONRAIL AND THE 3R ACT

Congress enacted the Regional Rail Reorganization Act of 1973 ("3R Act")[1] in response to the transportation crisis precipitated by the bankruptcies of major railroads in the Northeast and Midwest. The 3R Act charged the United States Railway Association ("USRA"), a federally chartered government corporation, with the primary responsibility to develop and implement a "Final System Plan" ("FSP") to preserve rail services previously provided by the bankrupt railroads.[2] After determining which routes of the bankrupt carriers could be operated profitably, the USRA designated particular lines for transfer from the estates of the bankrupt carriers to the Consolidated Rail Corporation ("Conrail"), a government-owned corporation created for the purpose of acquiring those lines.[3]

After the USRA completed the FSP and it was approved by Congress, the FSP was then transferred to the newly created Special Court.[4] The Special Court was given exclusive jurisdiction over all proceedings relating to the FSP. Under the FSP, the Special Court issued "conveyance orders" requiring the bankrupt carriers to transfer their lines to Conrail. The Special Court then granted special operating rights to other carriers to prevent a Conrail monopoly in any area.

---

1. 87 Stat. 985 (1974), 45 U.S.C. §§ 701 *et seq.* (1987).

2. 45 U.S.C. §§ 711(a), 712 (1987).

3. 45 U.S.C. §§ 741(a), 742 (1987).

4. 45 U.S.C. § 719 (1983).

## II. BACKGROUND OF THIS CASE

As a result of the FSP, several grants of operating rights were made to the Delaware and Hudson Railway Company ("D & H") to enable D & H to provide a competitive alternative to Conrail in areas of the Northeast where Conrail would otherwise have a monopoly on rail service.

Conrail and D & H negotiated "trackage rights" agreements setting forth the detailed terms and conditions for D & H's use of Conrail's lines pursuant to the operating rights grants. Conrail and D & H entered into two such agreements, one in 1978 and another in 1979.

In the course of negotiating the agreements, a disagreement arose between Conrail and D & H as to the precise scope of the rights granted to D & H by the FSP. The parties agreed to have the USRA resolve the disagreement. The USRA appointed Douglas Siegel, USRA's former Assistant General Counsel, to consider the parties' positions and issue a decision detailing the nature of D & H's rights. Conrail and D & H filed written submissions, in support of their respective interpretations of the original USRA operating rights grants, with Mr. Siegel and he issued his decision on October 4, 1982 ("1982 USRA Decision").

D & H went into bankruptcy, and in 1990, the Delaware and Hudson Railway Company ("DHC") acquired substantially all of D & H's assets, including both the 1978 and 1979 agreements. At no time did D & H or has DHC sought to vacate, modify, correct or otherwise challenge the 1982 USRA decision concerning the scope of the rights granted to D & H. Because Conrail believes that DHC has made statements that it can operate in a manner inconsistent with the 1982 USRA decision, Conrail has moved to confirm the 1982 USRA decision, as an arbitration award, under the Federal Arbitration Act,[5] the District of Columbia Arbitration Act,[6] and the common law.

5. 9 U.S.C. § 1 *et seq.* (1970 & Supp.1993).

6. D.C.Code §§ 16–4301 *et seq.* (1981 & Supp. 1994).

The Defendant has moved for dismissal on the following grounds: (1) the 1982 USRA Decision is not an arbitration award subject to review under the Arbitration Act, and therefore this court lacks subject matter jurisdiction; (2) assuming *arguendo* that the USRA Decision is subject to review under the Arbitration Act, the statute of limitations applicable to the federal, District of Columbia and common law claim have expired; (3) the Plaintiff has failed to demonstrate the existence of an actual controversy between the parties giving rise to, or warranting this court's exercise of, jurisdiction over this matter; and (4) Plaintiff's petition contains procedural flaws which warrant dismissal.

## III. LEGAL ANALYSIS

### A. *Jurisdiction*

#### 1. *The 1982 USRA Decision is an Arbitration Award*

The first issue the court must address is whether the 1982 USRA Decision is an arbitration award. The Defendant claims that the issue presented to the USRA representative involved a determination of the scope and proper interpretation of the operating rights grants designated to D & H in the FSP. Defendant contends that the USRA Decision is not an arbitration award but is "an order issued by a federal agency pursuant to the 3R Act which was issued to clarify 'what USRA intended' in making its original grants to DHRC [DHC]."[7] The Plaintiff argues that "[s]ince both [the 1978 and 1979] agreements demonstrate that Conrail and D & H intended USRA to be their chosen instrument for definitive settlement of the existing access issue, the 1982 proceeding was intended to be an arbitration."[8] Plaintiff additionally contends that its position is bolstered by the fact that both parties and the USRA have, at various times, referred to the 1982 USRA Decision as an "arbitration". Defendant denies that these references were intended to have any legal significance.

7. *Defendant's Motion to Dismiss* at 12.

8. *Plaintiff's Opposition to Defendant's Motion to Dismiss* at 7.

Black's Law Dictionary defines arbitration as "[a] process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard."[9] In both the 1978 & 1979 agreements Conrail and D & H agreed to submit the question concerning the scope of trackage rights to the USRA and they agreed to be bound by the USRA's decision.[10] The parties requested USRA to resolve the matter and it appointed Douglas Siegel, a former USRA lawyer, to consider the parties' positions and to render a decision. Both sides prepared briefs in support of their positions and submitted them to Mr. Siegel; there were no oral arguments. Mr. Siegel prepared a detailed decision setting forth each parties' rights under the 1978 & 1979 agreements.

**Conclusion**

This court, finding that Conrail and D & H agreed to have the matter decided by the USRA instead of seeking judicial action, that the USRA appointed a neutral third-party to resolve the dispute, and further that both sides had the opportunity to be heard before a decision was rendered, holds that the 1982 USRA Decision rendered by Mr. Siegel is an arbitration award.

### 2. *The Applicable and Legally Cognizable Statute(s) of Limitations Have Run*

#### a. *Federal Arbitration Act Statute of Limitations*

The relevant portion of § 9 of the Federal Arbitration Act ("FAA") provides:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time **within one year** after the award is made any party to the

arbitration may apply to the court so specified for an order confirming the award.[11]

Defendant argues that the FAA creates a one year statute of limitation and, since Plaintiff brought this action 11 years after the "arbitration," this action is time-barred. Plaintiff argues that this court should follow the holding of the Fourth Circuit's decision in *Sverdrup Corp. v. WHC Constructors, Inc.*[12] and hold that the one year period referred to in the statute is "permissive" and does not create a statute of limitation. The D.C. Circuit has not addressed this issue. This court has reviewed the cases cited by the parties and concludes that the FAA does provide a one year statute of limitation.

### *Precedent Considerations*

The Fourth Circuit in *Sverdrup Corp. v. WHC Constructors, Inc.,* held that "§ 9 must be interpreted as its plain language indicates, as a permissive provision which does not bar the confirmation of an award beyond a one year period."[13] In its opinion, the court notes that the word "may" in a statute normally indicates "a discretionary power, not a mandatory power", and states that "[a]n examination of the FAA's language gives rise to the inference that Congress understood the plain meaning of 'may' to be permissive."[14] Specifically, the court states "the use of alternating permissive and mandatory language throughout the FAA indicates that Congress was cognizant of the difference in meaning between the term 'may' and 'must' and intended that the term 'may' be construed as permissive."[15]

In its opinion, the Fourth Circuit examines the history of arbitration and, noting that the FAA supplements previously existing remedies, states that "an action at law remains a viable alternative to confirmation under § 9 [therefore] reading § 9 as a strict statute of limitations would be an exercise in futility."[16]

9. Black's Law Dictionary 105 (6th ed. 1990).

10. 1987 Agreement at page 4 and 1979 Agreement at page 5.

11. 9 U.S.C. § 1 *et seq.* (1970 & Supp.1993) (emphasis added).

12. *Sverdrup Corp. v. WHC Constructors, Inc.,* 989 F.2d 148 (1993).

13. 989 F.2d 148, 156 (1993).

14. 989 F.2d 148, 151 (1993).

15. 989 F.2d 148, 151 (1993).

16. 989 F.2d 148, 155 (1993).

The Fourth Circuit additionally states that the benefits of arbitration would be thwarted by a one year statute of limitations because [i]nstead of cutting off the rights of the parties to receive the proceeds of arbitration, it would merely encourage, at the expense of judicial economy, the use of another analogous method of enforcing awards ... individuals who prevailed in arbitration and failed to confirm within the one-year time limit would simply resort to filing actions at law ... [and] ... this would inevitably lead to inefficiency, delay and court congestion.[17]

Moreover, that court reasons that "[t]he resultant proliferation of confirmation motions provides an equally compelling reason to refrain from interpreting § 9 as containing a strict statute of limitations [since] individuals would be forced to protect their awards gained through arbitration by filing motions to confirm in every case."[18] In support of this position, the court cites to a First Circuit decision, *Derwin v. General Dynamics Corp.*[19]

In *Derwin v. General Dynamics Corp.*, a union representative brought action against his employer seeking confirmation of an arbitration award. The First Circuit held that in suits arising under § 301 of the Labor Management Relations Act, it is not "legally bound to apply the limitations period of the federal arbitration act to [a union's] local's suit to confirm."[20] Instead the court held, "we see no basis for departing from the ordinary presumption favoring the application of state statutes of limitations to actions arising under section 301."[21] It then "reject[ed] the company's suggestion [to] fashion

a uniform federal limitations period by borrowing the one-year provision of the federal arbitration act"[22] and ruled that "the district court erred in dismissing the union's action to confirm as time-barred under the one-year limitations period of 9 U.S.C. § 9."[23] While the First Circuit notes that other courts have "held that section 9's language is permissive, thus allowing actions to confirm where justice requires after the apparent one-year limitations period has elapsed,"[24] it did *not hold* that the one year limitations period provided in § 9 *is* permissive; while *Derwin dicta* may reasonably appear to suggest the permissive interpretation advanced by Plaintiff herein, supplemental analysis urges a different conclusion.

In *Kentucky River Mills v. Jackson,*[25] the Sixth Circuit declined to bar an action under common law to confirm an arbitration award after concluding that Congress intended the FAA to supplement and not replace other already existing confirmation procedures. The Sixth Circuit held that since § 9 does not provide the only remedy for enforcing an arbitration award, even if a party is time-barred from using § 9 to confirm the award because the one year statute of limitation has run, the party is not precluded from using other methods of confirmation such as theories under common law.[26]

In its opinion, the Sixth Circuit quotes the first two sentences of § 9 and then states

The language of the foregoing section as to application to the court for an order is not mandatory, but permissive. A party may, therefore, apply to the court for an order confirming the award, but is not limited to

---

17. 989 F.2d 148, 155 (1993).

18. 989 F.2d 148, 155–156 (1993).

19. 719 F.2d 484, 489–90 (1983).

20. 719 F.2d 484, 488 (1983).

21. 719 F.2d 484, 490 (1983).

22. 719 F.2d 484, 490 (1983).

23. 719 F.2d 484, 490 (1983).

24. 719 F.2d 484, 490 n. 5 (1983).

25. 206 F.2d 111, *cert. denied,* 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953).

26. This court recognizes that other courts have interpreted the holding in *Kentucky River Mills* to indicate that the one-year limitations period provided in 9 U.S.C. § 9 is to be read to be "permissive". *See Derwin v. General Dynamics Corp.,* 719 F.2d at 490 n. 5 (citing *Kentucky River Mills* and *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.* 452 F.Supp. 573 (D.C.Neb.1978)); *Paul Allison,* 452 F.Supp. at 575 (citing *Brown v. Bridgeport Rolling Mills,* 245 F.Supp. 41 (D.Conn.1965)); *Brown v. Bridgeport Rolling Mills,* 245 F.Supp. at 45 n. 7 (citing *Kentucky River Mills* ).

such remedy. Prior to the enactment of the United States Arbitration Act, an action at law on the award was the proper method of enforcing it. Enforcement of the award in this case is not barred by the one-year limitation contained in Section 9 of the Act, which provides for summary remedy of confirmation of the award by the court.[27]

This court interprets the Sixth Circuit's use of the phrase "not mandatory" to mean that confirmation application is not mandated as the only resource available to a party seeking relief on an arbitration award since a party "may ... apply to the court for an order confirming the award, but is not limited to such remedy." What the opinion establishes is that *enforcement* of the award is not barred by the one-year limitation since, for example, an action for specific enforcement may lie as well without regard to the one-year limitation delineated by the Act. Therefore, the fact that *confirmation* under § 9 is time-barred does not prevent the party from using another method to enforce the award.

The only D.C. Circuit case to touch upon the issue of a statute of limitation under § 9 is *Communications Workers of America v. American Telephone and Telegraph Co.*[28] In *Communications Workers,* the D.C. Circuit addressed the issue of the applicable statute of limitations to be applied to § 301 of the Labor Management Relations Act which was the same issue addressed by the First Circuit in *Derwin v. General Dynamics Corp.* The D.C. Circuit noted that there are different time periods allowed for motions to vacate awards and those applicable to motions to confirm and then states "[f]or example, under the United States Arbitration Act, actions to vacate awards must be brought within three months, 9 U.S.C. § 12, while actions to confirm awards must be brought within one year, 9 U.S.C. § 9." While this court recognizes this statement as *dicta*, it never-

theless constitutes a rare instance of comment by the D.C. Circuit on this significant issue.

In *Seetransport Wiking Trader Schiffarhtgesellschaft MBH & Co., v. Navimpex Centrala Navala,*[29] the Second Circuit provided an interpretation of the parallel provision of the Federal Arbitration Act, 9 U.S.C. § 207, governing international arbitrations.[30] The Defendant has suggested that this opinion would be instructive because of the similarities in the language of 9 U.S.C. § 9 and 9 U.S.C. § 207. Section 207 provides:

> Within three years after an arbitration award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.

Section 9 provides:

> [A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award.

In *Seetransport* the parties disputed over the interpretation of the word "made". It is clear from the opinion that both the Second Circuit and the parties recognized that § 207 provides a three year statute of limitations.[31] The parties, however, were in dispute as to when the statute of limitations period commenced to run. The Second Circuit reversed the judgment granting appellee's motion for summary judgment and remanded with instructions to dismiss the cause of action as being time-barred. This court, while recognizing that 9 U.S.C. § 207 governs international arbitrations, finds the Second Circuit's interpretation of the language of § 207 sufficiently analogous to lend support to the position that § 9 does provide a statute of limitation period and that the term "may" should

27. 206 F.2d at 120 (citations omitted).

28. 10 F.3d 887 (1993).

29. 989 F.2d 572 (2nd Cir.1993).

30. 9 U.S.C. § 207 (1970 & Supp.1993).

31. For instance, the court states "were we to follow the route suggested by *Seetransport,* and hold that the **statute of limitations** commences to run when an arbitration award becomes final according to the law that governs the contract ..." 989 F.2d 572, 581 (1993) (emphasis added).

not be read to make the one year period prescribed in the statute permissive.

### Policy Considerations

The Fourth Circuit in *Sverdrup*, implies that judicial economy would be sacrificed by a procedure implicating arbitration confirmation within a specified period, such as one-year, since "individuals would be forced to protect their awards gained through arbitration by filing motions to confirm in every case. Such consequences are repugnant to the intent of the FAA."[32] This court holds a different opinion. Fairness, finality and judicial economy are favorably affected by requiring the bringing of an action for confirmation within a specified period pursuant to § 9.

One of the FAA's purposes is to provide parties with an effective alternative dispute resolution system which gives litigants a sure and expedited resolution of disputes while reducing the burden on the courts. Arbitration should therefore provide not only a fast resolution but one which establishes conclusively the rights between the parties. A one year limitations period is instrumental in achieving this goal. In *Sverdrup*, the Fourth Circuit quotes a portion of the First Circuit's *Derwin* opinion in which the First Circuit stated that the limitations period to challenge an award under § 10 of the Massachusetts Arbitration Act ("MAA") " 'eliminates any prospect of a successful challenge to an award ... and ... encourages the parties

voluntarily to treat the award as final and binding ...' "[33] The First Circuit states that "[i]n a like manner, § 12 of the FAA makes a challenge to confirmation after 90 days virtually impossible and encourages parties to treat an award as binding."[34] The First Circuit reasons, and the Fourth Circuit adopts, that if there is a strict statute of limitation for confirmation of arbitration awards, the finality of awards would be undermined because "[i]f the prevailing party failed to obtain a confirmatory decree within the period, the award would become unenforceable."[35] This court disagrees that a statute of limitations for confirmation would undermine the finality of an arbitration award. On the contrary, this court is of the view that a one year confirmation period provides the parties with a true sense of finality; awards that are confirmed within one year have the effect of a court judgment and awards not confirmed are unenforceable under the FAA.

Finally, this court concludes that even if every prevailing party were to file a motion for confirmation, the goals of judicial economy would still be served. Under the FAA, the confirmation process is a ministerial task for a court. Section 9 requires courts to grant an order confirming an award unless the award has been vacated, modified, or corrected and under § 12 a motion to vacate, modify, or correct an award can only be brought within three months after the arbitration.[36, 37] Accordingly, the use of court

---

**32.** 989 F.2d 148, 156 (1993).

**33.** *Sverdrup Corp. v. WHC Constructors Inc.*, 989 F.2d 148, 156 (1993) (quoting *Derwin v. General Dynamics Corp.*, 719 F.2d 484, 489 (1983)).

**34.** *Sverdrup Corp. v. WHC Constructors Inc.*, 989 F.2d 148, 156 (1993).

**35.** *Sverdrup Corp. v. WHC Constructors Inc.*, 989 F.2d 148, 156 (1993) (quoting *Derwin v. General Dynamics Corp.*, 719 F.2d 484, 489 (1983)).

**36.** 9 U.S.C. § 12 (1970 & Supp.1993).

**37.** Even though § 12 states that challenges to an award must be brought within three months after the arbitration, some courts have held that opposing parties are not precluded by the three month statute of limitation from using grounds which could have been argued to vacate, modify, or correct an award to defend against confirmation of the award. The D.C. Circuit has not addressed this issue to date. It is possible, however, that when faced with the issue, the D.C. Circuit or the District Court for the District of Columbia may also decide that § 12 does not limit the time during which the defenses enumerated in § 10 and § 11 may be raised in opposition to a motion to confirm an award. If the D.C. Circuit or the District Court for the District of Columbia were to adopt this interpretation, the confirmation process has the potential of becoming more than a ministerial task in cases where an opposing party raises § 10 or § 11 defenses. If such an interpretation were adopted in this circuit, this court suggests that the fresh evidence which a one-year confirmation period will guarantee is necessary for a fair judgment.
*See for example: Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.* 452 F.Supp. 573 (D.C.Neb.1978) ("... the time structure within § 12 is inapplicable when the party who pre-

resources by parties seeking confirmation orders would be less than it would be if the court had to settle the disputes through dispositive motions or trials.

## Conclusion

 This court holds that the plain reading of § 9 indicates that if a party does not bring an action to confirm its arbitration award within one year after the award is made, the party will be time-barred from availing itself of the summary confirmation process provided by § 9. This court's interpretation of the statute and Congress' intent is that a party may use § 9's summary confirmation process for confirming an arbitration award only if it does so within one year after the arbitration. Since § 9 was meant to supplement and not preclude other remedies, confirmation under § 9 is not mandatory and as such a party is not prevented from using either state law or common law procedures to confirm the award. To rule otherwise would constitute a legal incongruity which this court determines was not intended by Congress.[38]

### b. *DC Arbitration Act statute of limitations and the Common Law statute of limitations*

There is also a dispute between the parties concerning the applicable statutes of limitations in relation to Plaintiff's claims under the D.C. Arbitration Act and common law.

 The D.C. Arbitration Act[39] does not contain an explicit statute of limitations for actions to confirm arbitration awards, therefore, this court looks to the D.C.Code's general section on limitation periods.[40] The Defendant suggests applying the limitations period established for actions "for which a limitation is not otherwise specially prescribed,"[41] i.e., three years. The Plaintiff, however, argues that since the 1978 and 1979 agreements were "sealed instruments," that the applicable limitations period is the one provided for instruments under seal,[42] i.e., twelve years. This court finds that while the 1978 and 1979 agreements were made under seal, the USRA Decision which Plaintiff seeks to confirm was not. Accordingly, this court holds that the applicable statute of limitation is three years. The Defendant also advocates applying the three year statute of limitations to the Plaintiff's common law claim since it is the limitation standard for the forum in which the court sits[43] and this court agrees.

## ORDER

For the reasons presented in this court's Memorandum Opinion, it is this 17th day of November, 1994,

---

vails at arbitration moves to confirm the award and the defendant desires to raise objections ..."); *Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 364 v. Ruan Transport Corp.*, 473 F.Supp. 298 (D.C.Ind. 1979) (Three-month limitation on motion to vacate, modify or correct arbitration award did not prevent motion to confirm on grounds which could have been argued to vacate, modify or correct arbitration the award. "... section 12 does not limit the time during which the defenses enumerated in sections 10 and 11 are available."); *Riko Enterprises, Inc. v. Seattle Supersonics Corp.* 357 F.Supp. 521 (D.C.N.Y.1973) ("Were this an independent motion to vacate, this Court would agree that respondent has run afoul of § 12. Petitioner has, however, by filing the instant application, provided respondent with the very means by which it can still raise the objections otherwise barred by § 12.").

38. However, if this court were to agree that the language of § 9 is "permissive", it would not interpret the language of § 9 to create an open-ended confirmation period. To permit an open ended opportunity for either party to sue on an arbitration award in order to make it

into a judgment presents problems which militate against fairness and judicial economy. Therefore, this court would follow the well established rule and, accordingly, borrow the most analogous District of Columbia statute of limitations. *Bond v. Texaco*, 647 F.Supp. 1135, 1137–38 (D.D.C.1986); *see also DelCostello v. International Bd. of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983), *Runyon v. McCrary*, 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976).

39. D.C.Code § 16–4301 *et seq.* (1981 & Supp. 1994).

40. D.C.Code § 12–301 *et seq.* (1981 & Supp. 1994).

41. D.C.Code § 12–301(8) (1981 & Supp.1994).

42. D.C.Code § 12–301(6) (1981 & Supp.1994).

43. *See Guaranty Trust v. York*, 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945) and *Friedman v. Manfuso*, 620 F.Supp. 109, 114 (D.D.C.1985).

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Petition to Confirm the Arbitration Award under the Federal Arbitration Act as Being Time-barred be, and hereby is **GRANTED;** and it is

**FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's Petition to Confirm the Arbitration Award under the District of Columbia Arbitration Act as Being Time-barred be, and hereby is **GRANTED;** and it is

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Petition to Confirm the Arbitration Award on theories of Common Law as Being Time-barred be, and hereby is **GRANTED.**

**SO ORDERED.**