**PHOTOPAINT TECHNOLOGIES, LLC, Petitioner–Appellant,**

v.

**SMARTLENS CORPORATION and Steven Hylen, Respondents– Appellees.**

Docket No. 02–7784.

United States Court of Appeals, Second Circuit.

Argued: Jan. 30, 2003.

Decided: July 14, 2003.

Kevin M. Hart, Stark & Stark, P.C., (Craig S. Hilliard, on the brief), Princeton, NJ, for Petitioner–Appellant.

J. Alexander Porter, Porter, Orrison & Doster, LLP, Atlanta, GA (Kandis M. Khan, Goodwin Procter LLP, New York, NY, Thomas D. Perrie, Perrie & Cole, LLC, Atlanta, GA, on the brief), for Respondents–Appellees.

Before: JACOBS, CALABRESI, and SOTOMAYOR, Circuit Judges.

JACOBS, Circuit Judge.

Photopaint Technologies, LLC, ("Photopaint") appeals from a final judgment entered in the United States District Court for the Southern District of New York (Knapp, *J.*), denying Photopaint's motion to confirm an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and granting the cross-motion for summary judgment of Smartlens Corporation and Steven Hylen (collectively, "Smartlens") on the grounds that section 9 of the FAA imposes a one-year statute of limitations on an application for an order of confirmation and that Photopaint (which moved for confirmation more than one year after the award was made) was not entitled to relief from this limitation period. *See Photopaint Techs., LLC v. Smartlens Corp.*, 207 F.Supp.2d 193, 196–202, 204–209 (S.D.N.Y.2002).

We reverse, holding that the FAA does impose a one-year statute of limitations, but that Photopaint is entitled to relief from the statutory period. For the reasons that follow, the judgment of the district court is vacated and the case remanded for further proceedings not inconsistent with this opinion.

## BACKGROUND

In December 1997, Photopaint and Smartlens entered into a license agreement containing a clause under which they agreed that their disputes would be submitted to arbitration. When a dispute arose in October 1999, they duly submitted it to an arbitrator selected by the American Arbitration Association ("AAA"). In an August 1999 "Partial/Interim Award," the arbitrator ruled largely in Photopaint's favor and ordered it to submit an accounting of costs associated with the license agreement. After reviewing these accounting submissions, the arbitrator signed a "Final Award" on May 26, 2000. The Final Award provided that the License Agreement was voidable; that either party could elect to rescind it within thirty days from receipt of the award; and that Smartlens would make a payment to Photopaint if either party elected to rescind. The amount of this payment was to depend on which party rescinded: if Smartlens rescinded first, it would pay approximately $384,000 plus Photopaint's share of the AAA costs; if Photopaint rescinded first, Smartlens would pay approximately $320,000.

Although the arbitrator signed the Final Award on May 26, 2000 and promptly sent it to the AAA for distribution, the AAA failed (for some reason) to deliver the award to the parties until October 3, 2000—more than four months later. The parties ultimately found out that the award had issued when Smartlens asked to have the arbitration hearing reopened for additional submissions; in denying that request on October 23, 2000, the arbitrator treated it as one for modification of the Final Award, noting that this award had been rendered on May 26, 2000.[1]

Since the Final Award provided that either party could rescind within thirty

---

1. The AAA's procedural rules require an arbitrator, "unless otherwise agreed by the parties," to make an award "no later than 30 days from the date of closing of the hearing." *Photopaint,* 207 F.Supp.2d at 205.

days of *receiving* the award, and since the parties first received it on October 3, 2000, the option to rescind was initially scheduled to expire on November 2, 2000. As this date neared, the parties entered into a series of letter agreements to allow for continued settlement discussions.

During the negotiations, Smartlens and Photopaint exchanged several drafts of a settlement agreement, in which they agreed that Smartlens would pay Photopaint a lump-sum of $360,000, but differed as to other provisions. In April, negotiations appeared close to resolution, and on April 16, 2001, Photopaint circulated a revised draft reflecting the $360,000 lump-sum payment and acceding to the remaining changes sought by Smartlens. Shortly afterward, however, Smartlens advised that, due to sharp financial reverses, it could offer no more than a lump-sum payment of $100,000, together with a promissory note. On May 1, Smartlens sought a further time extension "under exactly the same terms" as the parties' prior agreements, to "discuss [the] alternative proposal further and attempt to achieve a final resolution." Photopaint agreed. On the basis of this and subsequent letter agreements, the parties continued discussions into May, June, and July 2001—beyond the May 26 one-year anniversary of the rendering of the Final Award.

Negotiations broke down in July 2001, and on July 27, Photopaint rescinded the license agreement and demanded from Smartlens the $320,000 payment provided for under the terms of the Final Award. Smartlens refused to pay, and Photopaint filed this petition to confirm the Final Award pursuant to the FAA.

In the district court, Smartlens argued against confirmation on the ground that the application was time-barred, under section 9 of the FAA, because it was filed more than one year after the date the Final Award was made. The district court agreed, granted Smartlens summary judgment on this ground, and dismissed the petition. *Photopaint*, 207 F.Supp.2d at 202, 209. Photopaint appealed.

## DISCUSSION

We review *de novo* a ruling granting summary judgment, *see Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir.1998), construing the evidence in the light most favorable to the non-moving party (here, Photopaint) and drawing all reasonable inferences in that party's favor,[2] *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir.1998). *Cf. First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (stating that, on appeals from decisions upholding arbitration awards, we review legal conclusions *de novo* and factual determinations for clear error). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## I

Section 9 of the FAA provides, in pertinent part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made

2. The district court noted that the parties failed to comply with Local Civil Rule 56.1, which requires submissions reciting the facts that each party contends is undisputed. *Photopaint*, 207 F.Supp.2d at 196 n. 2. The court observed, however, that "the relevant facts are apparent from both parties' briefs and affidavits" and that there was no evidence of prejudice on account of the lack of Rule 56.1 submissions. *Id.*

pursuant to the arbitration, and shall specify the court, then *at any time within one year after the award is made* any party to the arbitration *may* apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order [confirming the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. 9 U.S.C. § 9 (emphasis added). The threshold question on appeal is whether this wording creates a one-year statute of limitations—a question of first impression in this Court.

As Photopaint emphasizes, the permissive verb "may," rather than the mandatory verb "must," is used in the clause affording one year to the party wishing to confirm an award, while "must" is used elsewhere in the same section and in other sections of the FAA. In section 12, for example, Congress used "must" in relation to the three-month period for filing a motion to vacate an arbitration award.[3]

We have recognized in another context that " 'when the same [statute] uses both "may" and "shall", the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory.' " *Weinstein v. Albright,* 261 F.3d 127, 137 (2d Cir.2001) (alteration in original) (quoting *Anderson v. Yungkau,* 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947)); *accord Lopez v. Davis,* 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001); *Haig v. Agee,* 453 U.S. 280, 294 n. 26, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981); *see also Rastelli v. Warden, Metro. Corr. Ctr.,* 782 F.2d 17, 23 (2d Cir.1986) ("The use of a permissive verb—'may review' instead of 'shall review'—suggests a discretionary rather than mandatory review

process."). Both the Fourth and the Eighth Circuits have relied on this "normal inference" in holding that "may" in section 9 is permissive only, and that petitions to confirm arbitral awards under the FAA may be filed beyond the "one year" period. *See Sverdrup Corp. v. WHC Constructors, Inc.,* 989 F.2d 148, 151–56 (4th Cir.1993); *Val–U Const. Co. of S.D. v. Rosebud Sioux Tribe,* 146 F.3d 573, 581 (8th Cir.1998); *see also Gronager v. Gilmore Sec. & Co.,* No. 93 Civ. 1484, 1996 WL 200303, at *3 (S.D.N.Y. Apr.25, 1996) (following *Sverdrup*), *aff'd on other grounds,* 104 F.3d 355 (2d Cir.1996) (unpublished disposition); *Nations Personnel of Texas, Inc. v. American Med. Sec.,* No. CIVA3:95–CV–3072–R, 2000 WL 626868, at *2 (N.D.Tex. May 15, 2000) (following *Sverdrup*). *But see In re Consol. Rail Corp.,* 867 F.Supp. 25, 30–32 (D.D.C.1994) (relying on considerations of finality to hold that section 9 imposes a mandatory one-year statute of limitations). In the Fourth Circuit's *Sverdrup* decision, which was relied on heavily by the Eighth Circuit in *Val–U Construction,* the court cited the ordinary permissive meaning of "may," as well as considerations of judicial economy, in holding that section 9's limitations period is not mandatory. *Sverdrup,* 989 F.2d at 151–52, 156; *accord Val–U Constr.,* 146 F.3d at 581.

We respectfully disagree, particularly in light of the Supreme Court's intervening decision in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.,* 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000). *Cortez Byrd* considered whether the word "may" is used permissively in the context of the FAA's venue provisions, under which (whenever the parties do not specify otherwise) proceedings "may" be conduct-

---

**3.** "Notice of a motion to vacate, modify, or correct an award *must* be served upon the adverse party or his attorney within three

months after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added).

ed in the district where the award was made. *Id.* at 197–98, 120 S.Ct. 1331 (discussing 9 U.S.C. §§ 9–11). Although the Court held that the venue provisions are permissive, it expressly declined to rely on the permissiveness of "may" as a matter of plain meaning.[4] *See id.* at 199, 204, 120 S.Ct. 1331. Instead, *Cortez Byrd* relied on considerations particular to venue: the overall structure of the FAA (a narrow reading of the venue provisions would have created "needless tension" with other parts of the FAA, *id.* at 201–02, 120 S.Ct. 1331), and the statutory history of the general federal venue provision, 28 U.S.C. § 112(a) (which was considerably more restrictive when the FAA was enacted, suggesting that Congress used "may" in § 9 to broaden venue under the FAA, *id.* at 199, 120 S.Ct. 1331). And the Court rejected the idea that use of "may" in some provisions of the FAA (including § 9)— and not in others—carries definitive significance:

> Enlightenment will not come merely from parsing the language, which is less clear than either party contends. Although "may" could be read as permissive in each section [of the FAA] ..., the mere use of "may" is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority. Certainly the warning flag is up in this instance. While [appellant] points to clearly mandatory language in other parts of the Act as some indication that "may" was used in a permissive sense, *cf.* 9 U.S.C. §§ 2, 12, [appellee] calls attention to a contrary clue in even more obviously permissive language elsewhere in the Act. *See* § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under

a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 ...").
> Each party has a point, but neither point is conclusive. The answer is not to be had from comparing phrases.

*Id.* at 199, 120 S.Ct. 1331 (footnotes and citations omitted, final alteration in original).

 We therefore consider the text of section 9 without affording decisive effect to the ordinary permissive meaning of "may." Although the word "may" in a statute "usually implies some degree of discretion[, t]his common-sense principle of statutory construction ... can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (footnote and citations omitted); *see also Calderon v. Witvoet*, 999 F.2d 1101, 1104 (7th Cir.1993) ("English offers so many possibilities that ... [a]ll depends on context."). One indication of legislative intent to the contrary here is that, unless the adverbial phrase beginning "at any time within one year" creates a time limitation within which one "may" apply for confirmation, the phrase lacks incremental meaning. *Cf. Sverdrup*, 989 F.2d at 156. We read statutes to avoid rendering any words wholly superfluous. *See, e.g., Committee to Stop Airport Expansion v. FAA*, 320 F.3d 285, 288 (2d Cir.2003); *Connecticut ex rel. Blumenthal v. United States Dep't of the Interior*, 228 F.3d 82, 88–89 (2d Cir.2000). Photopaint suggests that section 9 can be read to say that enforce-

---

4. This Court had earlier held that the FAA's venue provisions were permissive, relying on considerations of judicial economy and the statute's use of the permissive term "may" in

relation to venue. *See Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 706 (2d Cir. 1985).

ment is mandatory if the application is made within one year, and that it is discretionary thereafter. We are unpersuaded. Photopaint gives no support for this reading, no explanation as to how such discretion would be guided, and no theory as to why Congress would want to do that.

In *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir.1993), we construed section 207 of the International Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. § 201 *et seq.*, which is analogous to section 9 of the FAA, and held that a clause using the word "may" created a statute of limitation notwithstanding that "shall" was used elsewhere in the same provision.[5] *See Seetransport*, 989 F.2d at 580–81 (reversing judgment enforcing foreign arbitral award on ground that cause of action seeking enforcement of arbitral award under the convention was time-barred). *Seetransport* construed the Convention, not the FAA, but is otherwise difficult to distinguish.[6]

Dicta in our previous cases is to the same effect. In *The Hartbridge*, 57 F.2d 672 (2d Cir.1932), we suggested that, even though section 9's language was permissive, "the privilege conferred by section 9" was a privilege "to move 'at any time' *within the year*." *Id.* at 673 (emphasis added). Similarly, in *Kerr–McGee Refining Corp. v. M/T Triumph*, 924 F.2d 467 (2d Cir.1991), we cited section 9 for the proposition that, "[u]nder the Arbitration Act, *a party has one year* to avail itself of summary proceedings for confirmation of an award." *Id.* at 471 (emphasis added).

■ In light of these authorities, we read the word "may" in section 9 as permissive, but only within the scope of the preceding adverbial phrase: "[a]t any time within one year after the award is made." We therefore hold that section 9 of the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA. Our construction of the text is not inevitable, but it is intuitive: for example, tax returns may be filed anytime up to April 15, but one senses at once that the phrase is permissive only up to a point. Moreover, this result advances important values of finality:

> One of the FAA's purposes is to provide parties with an effective alternative dispute resolution system which gives litigants a sure and expedited resolution of disputes while reducing the burden on the courts. Arbitration should therefore provide not only a fast resolution but one which establishes conclusively the rights between the parties. A one year limitations period is instrumental in achieving this goal.

*In re Consol. Rail*, 867 F.Supp. at 31; *see also Young v. United States*, 535 U.S. 43,

---

5. Section 207 of the Convention provides in relevant part:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration *may* apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral . . . .

9 U.S.C. § 207 (emphases added).

6. In *Seetransport*, the court faced the question of when an arbitral award was "made"—or when the clock started ticking for purposes of the statute of limitations—rather than whether the statute's limitations period was mandatory; nevertheless, in holding that a petition filed beyond the Convention's three-year limitations period was time-barred, the *Seetransport* court necessarily, if implicitly, held the limitations period to be mandatory. *See* 989 F.2d at 580–81.

47, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (describing the "basic policies [furthered by] all limitations provisions" as "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities" (modification in original)).

In arriving at an opposite conclusion, the Fourth Circuit's opinion in *Sverdrup* made contextual and policy arguments that merit consideration. The *Sverdrup* court noted that Congress used "may" in the section 9 context of the one-year period for filing a motion to confirm an award, and "must" in the section 12 context of the three-month period for filing a motion to vacate, modify, or correct an award. *Sverdrup*, 989 F.2d at 151. Concluding that these sections are otherwise parallel, the court concluded that Congress "understood the plain meaning of 'may' [in section 9] to be permissive," *id.* at 151, and that section 9 "must [therefore] be interpreted as its plain language indicates, as a permissive provision which does not bar the confirmation of an award beyond a one-year period." *Id.* at 156.

Sections 9 and 11, however, are not otherwise parallel. Sections 10 and 11 of the FAA govern the filing of motions to vacate or modify; both describe the circumstances under which a court "may" make an order vacating, modifying or correcting an award "upon the application of any party to the arbitration . . . ." 9 U.S.C. §§ 10; 11. Because section 12 comes into play only in the event that a party makes such an application, "must" in section 12 unambiguously bears on *when* a party can file a motion to vacate, modify, or correct, and not *whether* the party has discretion to bring such a motion. (Such discretion is provided by the "may" in sections 10 and

11.) In section 9, by contrast, "may" *can* be read to reflect a party's discretion as to *whether* to "apply to the court . . . for an order confirming the award." *See Kentucky River Mills v. Jackson*, 206 F.2d 111, 120 (6th Cir.1953) ("The language of [section 9] as to application to the court for an order is not mandatory, but permissive. A party may, therefore, apply to the court for an order confirming the award, but is not limited to such remedy.").[7]

*Sverdrup* also relied on considerations of judicial economy: "[b]ecause remedies do exist outside the FAA's framework to enforce [an arbitral] award, reading § 9 as a strict statute of limitations would be an exercise in futility" because it would "merely encourage, at the expense of judicial economy, the use of another analogous method of enforcing awards." *Sverdrup*, 989 F.2d at 155. We agree with the Fourth Circuit that an action at law offers an alternative remedy to enforce an arbitral award, but we draw a different conclusion from the existence of that alternative. An action at law is not identical to the summary confirmation proceeding established by the FAA, which was intended to streamline the process and eliminate certain defenses. *See generally* Robert J. Gruendel, *Domestic Law and International Conventions, the Imperfect Overlay: The FAA as a Case Study*, Admiralty Law Institute Symposium: A Sea Chest for Sea Lawyers, 75 Tulane L.Rev. 1489, 1504–07 (2001) (noting that burdens and defenses available in an action at law to confirm an arbitration award differ from those in a statutory summary proceeding under the FAA). It was therefore not "futile" for Congress to have specified a statute of limitations for the filing of summary proceedings: consistent with the wording of

---

7. *Kentucky River Mills* held that the FAA supplements common law remedies available for the confirmation of arbitration awards. 206

F.2d at 120. Photopaint has brought no common law claim; we therefore need not consider the availability of such alternatives.

the statute, a party to an arbitration is entitled to the benefits of the streamlined summary proceeding only if, as it may do, it files at any time within one year after the award is made.

## II

■ It is undisputed in this case that Photopaint filed its motion to confirm the Final Award more than one year from the date on which the award was made, and that Photopaint's motion to confirm the award is therefore barred absent some relief from the limitations period. Photopaint asserts several grounds for such relief, largely framed in terms of equity. We need not consider, the availability of equitable relief, however, because the undisputed record establishes, as a matter of law, that Smartlens and Photopaint agreed to toll any applicable limitations periods imposed under the FAA.

■ It is undisputed that the parties entered into a series of agreements extending the time in which to conduct settlement negotiations; the parties, however, contest the scope of these agreements. The meaning of contract provisions is a question of law over which we exercise *de novo* review. *See Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 103 (2d Cir.2001). Under New York law, which applies here, judgment as a matter of law is appropriate if the contract language is unambiguous.[8] *See Lucente v. IBM Corp.*, 310 F.3d 243, 257 (2d Cir.2002) (citing *Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir.1994)). "Contract language is unambiguous when it has 'a definite and precise meaning, unattended by danger of misconception in the purport

of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Met. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir.1990) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978)). Unambiguous contract language is not rendered ambiguous by competing interpretations of it urged in litigation. *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 616 (2d Cir.2001) (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992)).

The letter agreements at issue were entered into after the parties received the Final Award, which provided that for a thirty day period, ending on November 2, 2000, either party could rescind the license agreement. In an October 31, 2000 letter memorializing previous oral discussions, however, the parties extended the rescission deadline as well as other (unspecified) dependent deadlines:

> [W]e both understand that the 30 day time period specified in section 2) A) of the Final Award would have required action by the parties on or before 2 November 2000. Our agreement to extend the time would therefore extend this date to on or before 16 November 2000. *All other dependent times, if any, would be extended a like amount. The agreed extension shall apply to all acts or failures to act permitted or required to or by either party.*

(Emphasis added.)

■ Smartlens argues that this wording is insufficient to extend the statute of limitation under the FAA. But the scope of

---

8. The letter agreements were silent as to choice of law; however, "[t]he parties' briefs assume that New York law controls, and such 'implied consent ... is sufficient to establish choice of law.'" *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (quoting *Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir.1989)).

the extension is broad and undifferentiated—"all acts and failures to act permitted or required to or by either party"—and at oral argument, counsel for Smartlens was unable to come up with an alternative formulation that would have been any broader. Moreover, the letter agreement was drafted by counsel for Smartlens, and we generally interpret contractual ambiguities against the drafter. *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000).

We need not rely on the breadth of this initial letter agreement, however, because the parties' intent was clarified in subsequent letter agreements—each of which recited that the extension of time is on the same terms as before. Specifically, the parties' November 13, 2000 letter extending their initial tolling agreement explicitly references the FAA: Smartlens, the drafter, warned that in the absence of a further extension of time, it would be forced "to complete the Motion [pursuant to section 12 of the FAA] to Vacate the Award and the Interpleader, both items [it] would like to avoid." Smartlens "therefore propose[d]" a further extension, "under exactly the same terms as were set out in [the] previous letter," emphasizing that the agreement would extend "the time within which action must be taken by either of us *to rescind the license, or otherwise.*" (Emphasis added.) And Smartlens required that Photopaint sign an acknowledgment that "[t]he above terms accurately state[d]" the parties' agreement. More letter agreements followed, each expressly predicated on the ones before, and each extending the time within which the parties had "to rescind the license agreement,

or otherwise." The initial series of letter agreements was followed by an "indefinite extension" for several months, and then by further periodic extensions.

This series of agreements and extensions, which continued until several months before Photopaint filed the instant petition for confirmation under the FAA, extended the one-year limitations period for filing the petition to confirm in this case.[9]

It is undisputed that the period covered by the tolling agreements—the approximately nine months from October 31, 2000 through July 27, 2001—is long enough to make Photopaint's motion to confirm timely. Smartlens therefore cannot prevail on its statute of limitations defense.

## CONCLUSION

For the reasons stated above, we agree with the district court's ruling that the FAA imposes a one-year statute of limitations, but reverse the judgment dismissing Photopaint's petition as untimely, and remand for further proceedings not inconsistent with this opinion.

**9.** Smartlens contends that the only reference to the FAA was included in a letter agreement signed within the three-month limitations period for filing a motion to vacate the Final Award, and that the parties thereby intended for the time extension to apply to the rescission deadline but not to the FAA's time deadlines. The words "or otherwise," drafted by Smartlens's counsel and used in a context that referenced the FAA, does not express this fine distinction.