16-1467
*Chassman v. Shipley*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of June, two thousand seventeen.

PRESENT: JOSÉ A. CABRANES,
          RICHARD C. WESLEY,
                   *Circuit Judges*
          WILLIAM K. SESSIONS III,
                   *District Judge.*[*]

---

MARGIE CHASSMAN,

          *Plaintiff-Appellant,*

      -v.-                                    16-1467-cv

ROBERT SHIPLEY,

          *Defendant-Appellee.*

---

[*] Judge William K. Sessions III, of the United States District Court for the District of Vermont, sitting by designation.

FOR APPELLANT:      STANLEY K. SHAPIRO, New York, NY.

FOR APPELLEE:       MARC A. SILVERMAN (Michael David Hynes, *on the brief*), DLA Piper LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Crotty, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED AND DECREED** that the judgment of said District Court be and it

hereby is **AFFIRMED**.

Plaintiff-Appellant Margie Chassman appeals the April 12, 2016 opinion

and order and April 13, 2016 judgment of the District Court (Crotty, *J.*) dismissing

Chassman's complaint as barred by the one-year statute of limitations set forth in

New York Civil Practice Laws & Rules ("N.Y. C.P.L.R.") 215(6). We assume the

parties' familiarity with the underlying facts and the procedural history, which we

reference only as necessary to explain our conclusions.

In exchange for a loan of $600,000 Margie Chassman executed a promissory

note (the "Note")[1] for an equal amount to her lender, Robert Shipley. The Note

required that Chassman use the borrowed money to buy 6,000 preferred shares (the

"Preferred Shares") in a publicly traded company then known as MedaSorb

---

[1] The parties agree that the Note is governed by New York law.

Technologies Corp. ("MedaSorb"). In addition to a ten percent per annum interest rate, the parties agreed that, as an inducement to Shipley to make the loan, Chassman would assign Shipley warrants to purchase shares in MedaSorb at a fixed price per share. The Note had a maturity date of November 21, 2008, at which time Chassman was required to either repay the principal plus interest due *or* to deliver to Shipley the Preferred Shares plus a cash payment for interest. Nowhere in the Note did the parties express that, if Chassman chose the latter, the value of the Preferred Shares in excess of the outstanding principal would constitute interest.

When it came time to pay, Chassman delivered the Preferred Shares in November 2008. Despite delivery of the shares, Chassman contends she retained ownership of the stock, collecting dividends thereon until October 2009. Chassman contends that when Shipley finally took ownership in October 2009 the Preferred Shares were worth more than $2 million.

In 2015, Chassman sued Shipley for breach of contract, alleging that she was entitled to any overcharged interest that exceeded New York's usury rate of twenty-five percent. She claimed that Shipley was required, pursuant to Paragraph 12 of the Note (the "Usury Provision"), to refund the value of the warrants and the

Preferred Shares that exceeded the usury limit set by New York, after crediting their value for payment of principal. In other words, she claimed that, to the extent the value of the securities she used to pay for her loan exceeded the amount of outstanding principal plus the 25% usury rate, she was entitled to that excess amount.

Shipley moved for summary judgment. He argued that Chassman's claim was barred by either the one-year statute of limitations applicable to claims of overcharged interest, N.Y. C.P.L.R. 215(6), or the six-year statute of limitations for breach-of-contract claims, N.Y. C.P.L.R. 213(2). Even if timely, Shipley argued, the claim was meritless.

In a brief opinion that relied almost entirely on *Siradas v. Chase Lincoln First Bank, N.A.*, No. 98-cv-4028 (RCC), 1999 WL 787658 (S.D.N.Y. Sept. 30, 1999), the District Court held that N.Y. C.P.L.R. 215(6) "applies for any claim alleging an overcharge of interest, regardless of whether the claim is contractual or statutory." *Chassman v. Shipley*, No. 15-cv-5228 (PAC), 2016 WL 1451585, at *3 (S.D.N.Y. April 12, 2016). The District Court dismissed Chassman's claim as barred by the one-year limitation period and did not address the parties' dispute as to the proper accrual date or the merits of Chassman's claim. *See id.* at *2-*3.

4

We review all issues here *de novo*. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (reviewing order granting summary judgment *de novo*); *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001) (applying *de novo* review to statute-of-limitations ruling). We may affirm on any basis apparent in the record. *Thyroff v. Nationwide Nut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006).

While we have substantial doubts (set forth in the margin[2]) as to whether the District Court's conclusion that the one year statute of limitations applies here, we need not decide this appeal on that conclusion as Chassman's claim is meritless.

---

[2] *Siradas* misreads two New York cases— *Englishtown Sportswear v. Marine Midland Bank.*, 467 N.Y.S.2d 693 (2d Dep't 1983), and *Rubin v. County National Bank & Trust Co. of Gloversville*, 520 N.Y.S.2d 640 (3d Dep't 1987)—and finds conflict between them where none exists. *See Siradas*, 1999 WL 787658, at *6. Indeed, the two cases nicely complement each other: N.Y. C.P.L.R. 215(6), at minimum, applies to statutory usury actions, as suggested in *Englishtown*, 467 N.Y.S.2d at 694, and, at most, to any statutory overcharge claims, as held in *Rubin*, 520 N.Y.S.2d at 640. The *Siradas* court read *Rubin* to extend N.Y. C.P.L.R. 215(6) to *all* overcharge actions, including those grounded in breach of contract. It did nothing of the sort. *Rubin* said only that N.Y. C.P.L.R. 215(6) applies to statutory overcharge actions, whether based on usury or some other provision of New York law that deals with overcharges. *See Rubin*, 520 N.Y.S.2d at 640.

As the factual allegations of Chassman's complaint and her brief reveal, this is a quintessential breach-of-contract case to which the six-year statute of limitations applies. Chassman's claim is that Shipley was "contractually obligated" under the Usury Provision to "immediately refund excess collateral and value of the Preferred Shares, but failed to do so." J.A. 14. That failure allegedly constituted a breach, and Chassman's requested relief is payment of the overcharged interest. Shipley (and *Siradas*) would have us ignore the contractual nature of the claim because the contract references New York's usury law. However, the fact that a claim sounding in contract, or some other theory of relief, references New York's usury law to make out an element of the claim does not trigger the usury statute of limitations. *See McNellis v. Raymond*, 420 F.2d 51, 55 (2d Cir. 1970). What

5

"The meaning of contract provisions is a question of law over which we exercise *de novo* review." *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003). Judgment as a matter of law is appropriate under New York law "if the contract language is unambiguous." *Id.* That parties to litigation urge different interpretations of unambiguous contractual language does not render that language ambiguous. *See id.* (citation omitted).

There is ultimately nothing to Chassman's claim of overpayment of interest, because she did not in fact pay any interest to Shipley. Chassman asserts that she made two interest payments. First, she claims the warrants she transferred to Shipley when the contract was executed constituted an interest payment on the loan. Second, she claims that to the extent the value of the convertible preferred shares she transferred to Shipley as an alternative principal payment exceeded 10% per annum on $600,000, the excess value was also an interest payment.

The relevant contract language here unambiguously contradicts Chassman's position. Paragraph 4 of the contract provides:

---

matters is that the parties contracted—albeit by reference to usury law—that any overcharge of interest above the amount set by law be refunded after crediting principal. Chassman's claim as alleged is for breach of that contractual language. N.Y. C.P.L.R. 215(6) does not somehow render her claim something it is not.

6

It is agreed that Chassman may repay the principal of this Note, in whole but not in part, by delivering to the Holder, at any time on or before the Maturity Date, the Preferred Shares, *together with a cash payment equal to the interest accrued hereunder through the date of such delivery* at the [10% per annum] interest rate set for in Section 1 hereof. *As an inducement to the Holder to advance the funds represented by this Note*, Chassman hereby grants the Holder an option . . . to purchase from Chassman up to 3.98 million shares of the common . . . of MedaSorb [also known as the warrants at issue in this case].

J.A. 20 (emphasis added).

This language removes any possibility that the assignment of the Warrants constituted a payment of interest. The contract makes clear that Chassman transferred the warrants as "an inducement" to convince Shipley to loan Chassman $600,000. There is no support in the above language for the notion that the warrants were, as Chassman urges, a deposit on the yet unaccrued interest on the loan.

Moreover, Chassman's assertion that the increased market value of the convertible Preferred Shares constituted an interest payment makes no sense in context. The contract provides that Chassman could elect to deliver the preferred shares to Shipley to "repay the principal" of the loan instead of paying back the $600,000 principal in cash. J.A. 20. The contract specifically requires, however, that if Chassman chooses this alternative principal payment, she must make an

7

additional "cash payment equal to the interest accrued . . . through the date of such delivery" at the regular, 10% per annum interest rate. *Id.* There is no hint anywhere in the contract that to the extent the value of the preferred shares exceeded $600,000, that value would constitute payment of interest—in fact, the contract specifically contemplates that any interest must be paid *in cash*.

In sum, Chassman's claim is belied by the unambiguous terms of the contract. Thus, even assuming her claim is timely, summary judgment was proper.

We have also considered the remainder of Chassman's arguments and find them to be without merit. Accordingly, the judgment of the District Court is AFFIRMED.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk

8